### BENNETT v. CARR.

PURE-FOOD LAWS—OLEOMARGARINE—COLOR.

Act No. 22, Pub. Acts 1901, prohibiting the sale of any product in imitation of yellow butter, does not prevent the sale of oleomargarine whose yellow color is produced naturally from its food ingredients.

*Certiorari* to Muskegon; Russell, J. Submitted June 29, 1903. (Docket No. 85.) Decided July 14, 1903.

*Mandamus* by John R. Bennett to compel John M. Carr, a justice of the peace, to entertain a complaint and issue a warrant for an alleged violation of the pure-food law. From an order denying the writ, relator brings *certiorari*. Affirmed.

*Charles A. Blair*, Attorney General, and *Cross, Lovelace & Ross*, for relator.

*Smith, Nims, Hoyt & Erwin* (*Kingsley & Wicks*, of counsel), for respondent.

Relator is an inspector of the State dairy and food department. On the 24th day of February, 1903, he made complaint before the respondent, a justice of the peace of the county of Muskegon, charging one Martin E. A. Aamodt with having sold one pound of oleomargarine, contrary to Act No. 22 of the Public Acts of 1901. The respondent refused to entertain the complaint and issue

a warrant, on the ground that the complaint stated no offense under the provisions of said act, and that said act is unconstitutional and void. Relator thereupon applied to the circuit court for the county of Muskegon for the writ of *mandamus* to compel the respondent to issue said warrant and proceed with the examination. The circuit court sustained the action of the respondent, and the case is now before us for review upon *certiorari*.

The statute in question reads as follows:

"SECTION 1. No person, by himself or his agents or servants, shall render or manufacture, sell, offer for sale, expose for sale, or have in his possession with intent to sell, any article, product, or compound made wholly or in part out of any fat, oil, or oleaginous substance or compound thereof, not produced from unadulterated milk or cream from the same, which shall be in imitation of yellow butter produced from pure, unadulterated milk or cream of the same: *Provided,* that nothing in this act shall be construed to prohibit the manufacture or sale of oleomargarine in a separate and distinct form, and in such manner as will advise the consumer of its real character, free from coloration or ingredient that causes it to look like butter."

The complaint charges Mr. Aamodt with unlawfully selling one pound of oleomargarine—

"Made wholly or in part of fat, oil, or oleaginous substance or compound thereof, as follows, to wit: Water, 11.75 per cent.; butter fat, 1.34 per cent.; beef fat, lard, and cotton-seed oil, 79.24 per cent.; salt and other mineral matter, 4.54 per cent.; curd, 3.13 per cent.,—said article, product, or compound not being then and there butter produced from unadultered milk or cream from the same, and being then and there in imitation of yellow butter produced from unadulterated milk or cream from the same, and not being then and there oleomargarine in a separate and distinct form, and in such manner as would advise the consumer of its real character, free from coloration or ingredient that would cause it to look like butter, but that the said oleomargarine was then and there of a yellow color in imitation of butter, said color not being then and there produced by the addition of any artificial coloring matter, but said color being produced solely by

the said ingredients therein contained, the said ingredients hereinbefore set forth having been selected and used in the manufacture of said oleomargarine in such manner and in such quantities and proportion as to produce an oleomargarine that was then and there in imitation of yellow butter produced from unadultered milk or cream from the same, contrary to the form of the statute," etc.

The oleomargarine so purchased was manufactured in the city of Chicago, State of Illinois, by one Moxley, a resident of said city, and was sold by said Moxley to said Aamodt in the usual course of trade, and by said Aamodt was sold in the usual course of retail trade, in the same form and condition, and in the original package, in which it was received by Aamodt from Moxley. It is conceded that this oleomargarine has a yellow color similar to butter, but the color is not produced by any artificial coloring substance or ingredient used for the purpose of coloration, but is produced solely by the selection and use, in proper proportions, of the substantial, recognized, legal, and necessary ingredients of commercial oleomargarine.

GRANT, J. (*after stating the facts*). Does the complaint state an offense covered by the statute? The answer depends upon the construction to be given to the statute. The relator contends that the statute covers all products which look like yellow butter, and that it is immaterial whether such color is produced by some ingredient introduced for the purpose of causing the product to look like butter, or whether such color is produced by authorized and legal constituent food ingredients. The respondent contends that the statute is aimed only at the use of ingredients used solely for the purpose of producing the yellow color, and does not prevent the manufacture of an article whose color is natural, genuine, and not an imitation.

Penal statutes must be construed strictly, and cannot be extended by construction beyond the intent of the act as expressed on its face. The conditions existing at the time the statute was enacted, and the mischief to be rem-

edied, are important factors in construing penal statutes. Two acts covering the same subject must be construed as *in pari materia,* and, if possible, effect given to both. These are elementary rules of construction. At the time the statute in question was enacted, the only method in use in causing the oleomargarine to look like yellow butter was the introduction of some extraneous coloring matter. This was the mischief to be remedied. We clearly so understood in *People* v. *Rotter,* 131 Mich. 250 (91 N. W. 167), where, speaking through Chief Justice HOOKER, we said of this statute: "The statute under consideration * * * does not prohibit sales of oleomargarine which is not tainted with the prohibited ingredients." See, also, *People* v. *Phillips,* 131 Mich. 395 (91 N. W. 616). The legislature has defined oleomargarine which may be manufactured and sold in this State. Section 6, Act No. 147, Pub. Acts 1899. It is conceded that the respondent has complied with this act. If we give the enlarged construction to the statute now in question, as urged by the relator, it follows that the legislature has prohibited the manufacture and sale of a valuable article of food, the natural color of which resembles yellow butter (itself almost universally colored by extraneous matter). The manufacturer of such a product, if he sold it at all, would be compelled to introduce some coloring matter so as to make it look unlike the yellow butter of commerce. These two statutes must be construed together. The article sold by the respondent is clearly authorized by the first act. The latter act does not in terms prohibit its sale and manufacture. It does prohibit the use of any substance for the sole purpose of producing yellow color. The use of such coloring matter was the sole mischief then known to exist, and the only danger to be apprehended and guarded against.

A similar statute was passed in New Jersey, and the like contention was made to support a conviction; and the court said:

"To construe the statute so broadly would render it practically prohibitive of the sale of all oleomargarine; for, of course, the compound must derive color from its ingredients, and such a prohibition has manifestly not been declared." *Ammon* v. *Newton*, 50 N. J. Law, 543 (14 Atl. 610); *McCann* v. *Com.*, 198 Pa. St. 509 (48 Atl. 470).

Our statute is copied verbatim from that of Massachusetts. A superior court of that State, in a case just decided, has held that the statute applies only to extraneous substances or ingredients which cause the product to look like butter, and not to cases where the ingredients themselves naturally produce the color. *Com.* v. *Heinberg.* The Supreme Court of the United States so held in regard to the same statute. *Plumley* v. *Com.*, 155 U. S. 461 (15 Sup. Ct. 154).

The term "ingredient," used in the statute, does not refer to the ingredients essential to produce the article as defined by the legislature, but to an ingredient used to produce color. The maxim "*Noscitur a sociis*" applies.

Under this disposition of the case, it becomes unnecessary to discuss any constitutional question.

The order is affirmed.

The other Justices concurred.