JASNOWSKI *v.* JUDGE OF THE RECORDER'S COURT OF THE CITY OF DETROIT.

1. FOOD—OLEOMARGARINE—STATUTES.

The manufacture and sale of oleomargarine as defined in section 6, Act No. 63, Pub. Acts 1913 (2 Comp. Laws 1915, § 6400), is lawful.

2. SAME—ADULTERATION—CRIMINAL LAW—STATUTES — REPEAL BY IMPLICATION.

Act No. 63, Pub. Acts 1913 (2 Comp. Laws 1915, §§ 6395-6402), authorizing and regulating the manufacture and sale of oleomargarine, as therein defined, said definition not including coloring matter in its ingredients, did not by implication repeal Act No. 22, Pub. Acts 1901 (2 Comp. Laws 1915, §§ 6393, 6394), prohibiting the manufacture and sale of oleomargarine containing coloring matter in imitation of yellow butter, and an information charging sales in violation of said act should not have been quashed for said reason.[1]

Mandamus by Charles H. Jasnowski, prosecuting attorney, against William F. Connolly, judge of the

[1]On the use of coloring matter in oleomargarine as adulteration, see note in 25 L. R. A. (N. S.) 1234.

recorder's court of the city of Detroit, to compel respondent to set aside an order quashing a certain information. Submitted February 21, 1917. (Calendar No. 27,702.) Writ granted March 29, 1917.

*Charles H. Jasnowski,* Prosecuting Attorney (*Eugene P. Berry,* of counsel), for relator.

In 1899 the legislature passed an act (No. 147) entitled:

"An act in relation to the manufacture and sale of oleomargarine, or imitation butter."

In 1901 it passed an act (No. 22) entitled:

"An act to prevent deception in the manufacture and sale of imitation butter."

It contains two sections, the first reading:

"No person, by himself or his agents, or servants, shall render or manufacture, sell, offer for sale, expose for sale, or have in his possession with intent to sell, any article product or compound made wholly or in part out of any fat, oil, or oleaginous substance or compound thereof, not produced from unadulterated milk or cream from the same, which shall be in imitation of yellow butter produced from pure unadulterated milk or cream of the same: *Provided,* that nothing in this act shall be construed to prohibit the manufacture or sale of oleomargarine in a separate and distinct form, and in such manner as will advise the consumer of its real character, free from coloration or ingredient that causes it to look like butter"

—the second providing a penalty for violation of the act. The act of 1899 was considered by the court in *Shepherd* v. *Judge of Recorder's Court,* 175 Mich. 193 (141 N. W. 556). Thereafter the legislature, in 1913, enacted Act No. 63 (2 Comp. Laws 1915, § 6395 *et seq.*), entitled:

"An act to regulate the manufacture, display, advertisement and sale of oleomargarine or imitation butter and to prevent fraud and deception therein and

to provide penalties for violations thereof, and to repeal act number one hundred forty-seven of the Public Acts of eighteen hundred ninety-nine, entitled 'An act in relation to the manufacture and sale of oleomargarine, or imitation butter.' "

It also repealed all acts or parts of acts inconsistent with the provisions thereof.

Like the act of 1899, the statute of 1913 contains in its title notice that the manufacture of oleomargarine is in some way regulated. In terms the acts are both of them addressed, not to manufacturers as such, but to persons who sell, expose, or offer for sale, or have in possession with intent to sell or exchange, oleomargarine. The manufacture of the substance as a process is not forbidden. Indirectly the manufacture is regulated because the manufacturer must sell his product, and so must offer or expose it for sale, and there is in section 6 of both acts a list of the substances which for the purposes of the act are to be known and designated as oleomargine. Included in this list is "all substances heretofore known as oleomargarine, oleo, oleomargarine oil, butterine, lardine," etc., "and all mixtures and compounds" of these substances, "all lard extracts and tallow extracts," etc., "made in imitation or semblance of butter, or when so made, calculated or intended to be sold or used as butter or for butter."

The act is not disobeyed if persons sell what is by the act so designated if the vessel, package, roll, or parcel of it sold bears a certain printed notice, and if a certain verbal and a printed notice is given to the purchaser at the time of the sale. Unlike the law of 1899, the one passed in 1913 does not require that the printed or verbal notice required to be given by the seller shall state the name of each and every article or ingredient used or entering into the composition of the substance sold.

In the January, 1915, term of the recorder's court of the city of Detroit an information was filed charging that May Pixley did have in her possession with intent to sell and did sell a certain quantity of oleomargarine, a compound made in part of certain fats, oils, and oleaginous substances, not produced from unadulterated milk or cream from the same, "and which substance or compound was in imitation of yellow butter produced from pure unadulterated milk and cream from the same, in this, that said compound, to wit, said oleomargarine, purchased as aforesaid, contained foreign yellow coloring matter which caused said oleomargarine to have the appearance and be in imitation of yellow butter produced from the pure milk and cream of the cow, contrary to the form of the statute," etc.

The recorder was of opinion that the act of 1913 was intended to supplant and repeal the act of 1901, and that it did by implication repeal it, and therefore quashed the information. This court is asked to issue its mandate to the recorder to set aside his order and ruling and restore the said information. The single question presented is whether the act of 1901 is repealed by the later statute.

OSTRANDER, J. (*after stating the facts*). It is clear that the manufacture and sale of oleomargarine is lawful in this State. What oleomargarine is is defined in the law of 1913. The definition excludes coloring matter. If matter is introduced for the purpose of coloring it, a compound not recognized in the law as oleomargarine is produced. The manufacture and sale of such a compound is prohibited by the law of 1901. This is the effect of the reasoning of the opinions in *People* v. *Rotter*, 131 Mich. 250 (91 N. W. 167) ; *Bennett* v. *Carr*, 134 Mich. 243 (96 N. W. 26). See, also, *People* v. *Phillips*, 131 Mich. 395 (91 N. W. 616). In *People* v. *Rotter* it was said of the act of 1899 that

it does not prohibit sales of oleomargarine which is not tainted with the prohibited ingredients. In *Bennett* v. *Carr* it was said:

"The legislature has defined oleomargarine which may be manufactured and sold in this State."

It was further said:

"These two statutes [1899 and 1901] must be construed together. The article sold by respondent is clearly authorized by the first act. [It was yellow, but contained no coloring matter.] The latter act does not in terms prohibit its sale and manufacture. It does prohibit the use of any substance for the sole purpose of producing yellow color. The use of such coloring matter was the sole mischief then known to exist and the only danger to be apprehended and guarded against."

The repeal of the act of 1899 and its practical re-enactment in 1913 does not impair the effect of this reasoning. The respondent may sell oleomargarine—the substance defined in the act of 1913—by complying with the conditions of the act, and may not sell oleomargarine containing an ingredient or matter not named in the statute of 1913, introduced for the purpose of coloring the substance to imitate yellow butter. The acts of 1901 and of 1913 are not conflicting, and necessarily the earlier act is not repealed by the later one.

The recorder should not, for the reason given, have quashed the information. The writ will issue.

KUHN, C. J., and STONE, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.