PEOPLE *v.* MILLER.

CRIMINAL LAW—INFORMATION—PURE FOOD LAWS—OLEOMARGARINE
—LABELING—STATUTES.

> In a criminal prosecution, evidence that defendant sold
> oleomargarine, or a substance resembling butter, artifi-
> cially colored with annotta, without labeling the same as
> required by section 1, Act No. 63, Pub. Acts 1913 (2 Comp.
> Laws 1915, § 6395), is insufficient to sustain a conviction
> under an information charging violation of said act, since
> the definition of oleomargarine, which may be lawfully
> sold when properly labeled, under section 6 of said act,
> excludes artificial coloring matter, and if the substance
> which defendant sold had been labeled as provided in said
> act, the sale would still have been unlawful and in viola-
> tion of Act No. 22, Pub. Acts 1901 (2 Comp. Laws 1915,
> § 6393).

Exceptions before judgment from Ingham; Wiest,
J. Submitted October 17, 1918. (Docket No. 115.)
Decided December 27, 1918.

Michael Miller was convicted of violating section 1
of Act No. 63, Pub. Acts 1913. Reversed, and re-
spondent discharged.

*James Harris,* for appellant.

*Alex. J. Groesbeck,* Attorney General, *Lee H. Pryor,*
Assistant Attorney General, and *William C. Brown,*
Prosecuting Attorney, for the people.

Respondent was informed against, charged with
violating section 1, Act No. 63, Pub. Acts 1913 (2
Comp. Laws 1915, § 6395), which provides:

"No person shall sell, expose or offer for sale or
exchange, or have in his possession with intent to sell
or exchange, any oleomargarine or other substance
made in imitation of butter, and which is intended to

be used as a substitute for butter, unless each and every vessel, package, roll or parcel of such substance has distinctly and durably printed, stamped or stenciled thereon in black letters the true name of such substance, in ordinary bold faced capital letters, not less than five line pica in size; and also the name and address of the manufacturer, in ordinary bold faced letters, not less than pica in size."

The testimony for the people (none was introduced for respondent) tended to prove that an inspector of the food and drug department of the State called at respondent's store—was inspecting it—and found a quantity of what respondent called butter, on a platter, in rolls. Respondent told him that he bought it from a farmer. The substance looked like butter. Witness bought about a third of a pound of it, put his seal on it, and took it to the State analyst to be analyzed. There was nothing printed in the substance, stamped or stenciled on it, or on the package or roll, in black letters or otherwise. There was no sign in respondent's store that oleomargarine was sold there. The sample was analyzed. The analyst testified that it was oleomargarine, artificially colored with annotta. On cross-examination, the analyst said:

"This butter I analyzed was of a yellow color. I am positive that the only ingredient that gave it the yellow color was annotta, yes, sir. It was not butter fat. I didn't make an analysis for the ingredients, merely to determine that it was oleomargarine and not butter. The only purpose for which I made the analysis was to find out whether it was oleomargarine artificially colored. By oleomargarine, I mean something that is not butter, that it is a substitute and sold as butter. I did not find any cream or butter fat in this. I did not look for it."

The people having rested, respondent's counsel made the motion and argument here set out:

"May it please the court, I desire at this time to make a motion to quash the information and all pro-

ceedings, and ask that the respondent be discharged, for the reason that from the testimony given here and the case made by the prosecution, that this is not oleomargarine within the law. The definition of oleomargarine, as given by the statute of 1913, reads as follows:

> "'All substances heretofore known as oleomargarine, oleo, oleomargarine oil, butterine, lardine, suine and neutral; all lard extracts and tallow extracts and all mixtures and compounds of tallow, beef fat, suet, lard, lard oil, vegetable oil, butterine, lardine, suine and neutral; all lard extracts and tallow extracts; and all mixtures and compounds of tallow, beef fat, suet, lard, lard oil, vegetable oil, butterine, lardine, suine and neutral, intestinal fat and offal fat, made in imitation or semblance of butter or when so made, calculated or intended to be sold or used as butter or for butter.' [2 Comp. Laws 1915, § 6400.]

"But it does not include coloring matter, and when coloring matter is used in oleomargarine, it produces a substance or compound not recognized in the law as oleomargarine.

"Now, I desire to call your attention to the fact that this is not oleomargarine as recognized in the statute. As I remember, there have been three laws passed governing the manufacturing and sale of oleomargarine. The first was passed in 1899, regulating the manufacture and sale of oleomargarine or imitation butter; the next was passed in 1901. This was a statute to prevent deception in the manufacture and sale of imitation butterine. Now those two laws remained in force until the year 1913—we had two laws governing and regulating the manufacture and sale of oleomargarine or imitation butter.

"In 1913, which was the time the law was enacted, a new law was passed which repealed that of 1899, and the act of 1913 is practically a re-enactment of the law of 1899. Thus we have, at this time, two laws regulating the manufacture and sale of oleomargarine, that of 1901 and that of 1913. Now, I call your honor's attention to the fact that this case, as made by the testimony of the prosecution, comes under the law of 1901, which is an act to prevent deception in the manufacture and sale of imitation butter or oleomargarine. Citing authorities.

"This proceeding is brought under the wrong statute, and if respondent is liable at all, proceedings should be instituted under the law of 1901, and not under that of 1913."

The motion was denied, respondent excepted, the jury was charged and returned a verdict of guilty. In denying the motion, the learned trial judge said:

"The act of 1901 did not prohibit the sale of oleomargarine in a separate and distinct form or in such manner as would advise the consumer of its real character, free from coloration or ingredient that caused it to look like butter. The respondent in this case is not charged with any offense under that statute. The statute of 1913 is silent upon the question of whether there is color included or not and provides that a person making a sale of oleomargarine or other substance made in imitation of butter, shall inform the purchaser and deliver to the purchaser a separate and distinct label on which is plainly and legibly printed, stamped or stenciled thereon, in black letters, in bold-faced capital letters, the true name of such substance. This information charges the respondent with making a sale of oleomargarine without having durably printed, stamped or stenciled thereon, in black letters, the true name of such substance. The matter of coloration has nothing to do with this. The motion to quash is overruled."

The record is brought here upon exceptions before sentence.

OSTRANDER, C. J. (*after stating the facts*). Respondent is charged with having in his possession and with selling, not stamped, "*a certain mixture commonly known as oleomargarine*." The proof is that he sold a substance, not butter, but a substitute for it, artificially colored with annotta to give it a yellow color.

Section 6 of said Act No. 63 reads as follows:

"For the purpose of this act certain manufactured substances, certain extracts and certain mixtures and

compounds, including such mixtures and compounds with butter, shall be known and designated as 'oleomargarine,' namely: All substances heretofore known as oleomargarine, oleo, oleomargarine oil, butterine, lardine, suine and neutral; all mixtures and compounds of oleomargarine, oleo, oleomargarine oil, butterine, lardine, suine and neutral; all lard extracts and tallow extracts; and all mixtures and compounds of tallow, beef fat, suet, lard, lard oil, vegetable oil, butterine, lardine, suine and neutral; all lard extracts and tallow extracts; and all mixtures and compounds of tallow, beef fat, suet, lard, lard oil, vegetable oil, intestinal fat, and offal fat, made in imitation or semblance of butter, or when so made, calculated or intended to be sold or used as butter or for butter."

In *Jasnowski* v. *Judge of Recorder's Court,* 195 Mich. 269, a person was informed against, charged with selling a certain quantity of oleomargarine containing foreign yellow coloring matter which caused said oleomargarine to have the appearance and be in imitation of yellow butter produced from the pure milk and cream of the cow. The information was laid under the provisions of Act No. 22, Public Acts of 1901 (2 Comp. Laws 1915, § 6393), the first section of which reads:

"No person, by himself or his agents, or servants, shall render or manufacture, sell, offer for sale, expose for sale, or have in his possession with intent to sell, any article, product or compound made wholly or in part out of any fat, oil or oleaginous substance or compound thereof, not produced from unadulterated milk or cream from the same, which shall be in imitation of yellow butter produced from pure unadulterated milk or cream of the same: *Provided,* That nothing in this act shall be construed to prohibit the manufacture or sale of oleomargarine in a separate and distinct form, and in such manner as will advise the consumer of its real character, free from coloration or ingredient that causes it to look like butter."

The information was quashed upon motion of re-

spondent, the trial court being of opinion that Act No. 63 of the Public Acts of 1913 repealed the law of 1901. In reversing the ruling of the trial court, we held the acts not to be in conflict with each other, saying:

"The respondent may sell oleomargarine—the substance defined in the act of 1913—by complying with the conditions of the act, and may not sell oleomargarine containing an ingredient or matter not named in the statute of 1913, introduced for the purpose of coloring the substance to imitate yellow butter."

We said further:

"What oleomargarine is is defined in the law of 1913. The definition excludes coloring matter. If matter is introduced for the purpose of coloring it, a compound not recognized in the law as oleomargarine is produced."

And see *Bennett* v. *Carr*, 134 Mich. 243. What was said in *Jasnowski* v. *Judge of Recorder's Court* was not *obiter*. The conclusion could have been reached upon no other reasoning. The conclusion which was reached denied the contention that after the law of 1913 became effective it was lawful to sell oleomargarine artificially colored.

Both acts referred to are police regulations. They must be read and considered together. If we do this, it is apparent that respondent was not required to stamp or stencil the substance which he sold. Impliedly, he was forbidden to do so. If he had complied exactly with the law of 1913, he would still have made an unlawful sale. Indeed, he would have added deceit to deception, used a label in apparent compliance with one law to aid in the violation of another. The law of 1913 relates to the stamping and stenciling of a substance which when stamped and stenciled may be used, a substance defined in the act itself, a definition which excludes artificial coloring matter.

Applying what was said in *Jasnowski* v. *Judge of Recorder's Court, supra,* we are of opinion that the evidence did not sustain the information and that the conviction should be set aside and the respondent discharged.

BIRD, MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.